Our fifth case of the morning is in three appeals, 24-1788, 24-2168, 24-2388, the United States v. Stephon Demus, Ryan Clark, and Marlon Barksdale. Mr. Tice, Good morning. May it please the Court, Bill Tice for the three appellants in this case. We start with the obvious proposition that not all robberies are Hobbs Act robberies. And this Court has set down a line or a marker. If someone robs a business, and it could be a corporation, it could be a person, it could be the employees, that's a Hobbs Act robbery, or at least potentially if all the other elements are met. But if you rob someone who's not in a business, that's not a Hobbs Act robbery. Now true, we're all engaged in commerce, each and every one of us in this courtroom. We do things every day that will somehow affect commerce. If we were to act on that reality, then all robberies would be Hobbs Act robberies. But that's not what this Court has set. Mr. Tice, can I ask you a question about the timing of the robbery? If I was at a store, and I was a customer at a store, Ace Hardware let's say, and I was paying for an item, and I was robbed, I was standing at the counter paying for an item, and I was robbed, would that be a Hobbs Act robbery? If the robber takes the money out of your hands as you're about to turn it over to them. Yeah, I'm at the counter purchasing something, you would agree that would be a Hobbs Act robbery, or would you not? I would not, because you still haven't turned the money over to the business. Okay, that was my question for you, sir. You would agree if I handed the money over to the teller, the cashier, and the robber arrived five seconds later and robbed the cashier, that would be a Hobbs Act robbery. Right, that's what happens when we draw lines. It all comes down to timing. In other words, if you take the money out of the cashier's hand, it's a Hobbs Act robbery. If you take the money out of the customer's hand, it's not. Right, and it's even broader than the timing, because in this case, the government is sort of saying to you that robbing people on the street outside the business, that could be swept into the Hobbs Act. Well, I don't know about that. I don't know that the jury convicted based on that robbery on the street. Okay. I don't know. Well, I mean, at the trial, that's what they argued. They said you saw them robbing customers in the store, you saw someone out on the street. So the line is there, and as I say, like any line, in the close cases, it's going to cut. That's what makes it a line. And the line is there from Mattson, and Moore continues it, Bouloghanis continues it, and you know, it's not just the law of this circuit. Other circuits have cited cases like Mattson and Bouloghanis and come to the same conclusion. And in fact, the only case that the government has proffered in this is this unreported Fourth Circuit case, Wiggins, where someone robs not the motel, but the guests in the motel. And after that, the motel says, you know, we're really sorry, we're really upset. How can we make this right? We're going to give you back your room rent. And the Fourth Circuit says, well, that would be a Hobbs Act robbery. Well, you know something? The Fourth Circuit adopted the rule that this court set down in Mattson and Moore and Bouloghanis, and relied on that in other cases. And in Wiggins, they did something that Mattson anticipated, because in Mattson, this court said, well, you know, there's no Hobbs Act extortion here, and the cases are interchangeable, whether it's extortion or robbery. The point is, who's the victim? And in Mattson, this court said, you know, if Playboy had reimbursed its employee for the extortion payment, then we could see that there was a Hobbs Act extortion directed towards the business. But in fact, that wasn't there, so we're going to reverse the conviction. And Wiggins does exactly what Mattson anticipated. So the government is left with no cases to support its position. They like to rely on a language that says, you know, the Hobbs Act extends pretty far. Yeah, nobody disagrees about that. But it does not extend so far to include people who are not in business, people who are customers. We've been providing a lot of hypotheticals today, and so I have one. Just to tease this out, what if, let's say we're in the store, customers inside the store, using Judge Kirsch's hypothetical. The customers are robbed, but the employee, the store, let's use it, is not, just the customers inside the store. Is that a Hobbs Act robbery that can be charged? No, it is not. And I'm sure the customers are fearful. It may affect the merchant's business. But it would be just like if a merchant were to say, oh, there was this vicious robbery on the sidewalk in the neighborhood, and now people don't want to come down and eat dinner. We hear a lot about that. You know, that does not make the robbery of the customers a Hobbs Act robbery. And it's not like these folks- Even if the business shuts down for an hour and a half while the police come in and talk to the customers that got robbed. Yeah, and the government cites a lot of cases in which the business shuts down, but those are all cases in which the store was robbed. And you know, what normally happens, robbers go into a store, they rob the store, why should they limit themselves to the store? They rob the customers too. But if it's just the customers, not the store, not a Hobbs Act robbery. But Mr. Tice, let me ask you, could that hypothetical is different than my hypothetical? Because in that case, if I go to a store, let's go to Ace Hardware. I'm walking around Ace Hardware. I'm not necessarily engaged in commerce. I might not buy anything. But here, it's different because these customers were clearly there to buy something. There's no shopping around. There's no looking around. They're standing in line to buy like an ice cream cone at the Dairy Queen. That's what they're doing. You don't stand in line at Dairy Queen and then get to the front of the line and say, the heck with it. I want a hamburger. I don't want an ice cream cone. You walk out. That's not what happened here. They were engaged in commerce. Well, probably some of them were. It wasn't all that clear. You know, people go in. Yeah, it could have been with their friend. But the fact that you're in there as a customer intending to buy, you're still a customer. And this court says, no, you've got to rob the business before there's a Hobbs Act. Mr. Tice, I know you want to save some time. Would you mind if I try to squeeze in one last question? Please do. Okay. There's different parts of your brief where you seem to be arguing that the government proceeded on alternative theories of liability, that it had a theory of liability with respect to the customers. And all I mean by customers are the people that were standing near the window of J&J in that vestibule area. But in the alternative, they seem to focus on one or more of these individuals that were outside. And you cast that as two theories of liability. You don't expressly make the argument, at least not that I saw, that you're not arguing that there's a constructive amendment of the indictment, are you? No, no. We're solely talking about what is sufficient. And my only point is if this court were to abandon its precedent and say you can predicate a Hobbs Act robbery on robbering the customers, it should not take that extra step of saying you can rob people on the street who maybe are thinking about being customers or maybe they're just hanging out on the street. Because that seems to be the subtext of what was going on at the trial. And that's why when it came to the instruction conference, the government fought tooth and nail and won to preclude any mention in the instructions about robbing customers or naming customers. And that left it open for the government to argue that guilt could be predicated on robbing even people who weren't customers. And the government did just that in its closing argument. They talked about we showed you what happened on the street. We showed you what happened inside the vestibule. I don't think you really need to get to that legal question because the basic legal question is can customers be Hobbs Act victims? And this court has already said no. It's only if you're willing to change the law that we would get into this finer point about people on the street. Okay. Great. I understand. We'll bring you back up. We'll give you the time on rebuttal. Okay. You're welcome. Let's hear from the government. Ms. O'Neill, nice to see you. May it please the court, Christine O'Neill on behalf of the United States. The defendant's robberies affected interstate commerce in two ways here. They interrupted commerce as it was about to occur and their actions closed down the store for up to an hour, interrupting future commerce. The district court properly instructed the jury as to the interstate commerce requirement, specifically that the defendant's actions affected or had the potential to affect interstate commerce in any way or degree. This occurs if the natural consequences of the defendant's actions were or would have been some effect on interstate commerce. The connection to an effect on commerce here is clear. Defendants robbed several customers standing in line who were waiting to make purchases from a store that moved goods in interstate commerce. The store was set up in a unique way. In order to purchase goods, customers had to stand in the store's vestibule and line up in front of a cashier window. Do you agree with the counsel on the other side that customers cannot be Hobbs Act robbery victims? No, Your Honor, and in fact, the Seventh Circuit, this court's case law does not draw that line. Defendants are trying to pull that out of a number of cases on Hobbs Act interstate commerce, but this court has simply never held that. The defendant's entering that tiny space armed with firearms and pointing them in the customer's faces naturally stopped those transactions from happening, and it was foreseeable that their actions caused the store to close, which turned away future customers. Numerous circuits have relied upon store closures and their effect on commerce as a basis for affirming Hobbs Act robbery convictions. The defendants are asking this court to disturb the jury's verdict based on the idea that the store itself must be the victim of a robbery, but this proposed rule has no support in the text of the statute, in the jury instruction, or in the case law. And so if we keep with the broad definition of affecting interstate commerce, what is the limiting principle? Of course, I'm going to the pedestrian on the outside. Yes, Your Honor. I think you need to take the two ways that this robbery impacted interstate commerce one at a time. First is the people standing in line who are getting ready to pay. Certainly as Judge Kirsch was discussing when my colleague was up here, you know, if someone's wandering a store, you can imagine a larger department store or a hardware store, maybe they are going to buy something, maybe they aren't. There's probably a line to be drawn somewhere in there between that person and the people who are standing in line with their money out in a store where there's no browsing. I was going to say, not even a line, it's a vestibule. It's really crowded in there. You can see that there are at least eight people kind of waiting in the short video that is part of the record here, Government Exhibit 10-C. There are a few minutes before the robbery where you see several people make purchases and then exit the store. Other people come in and get in the line. It's pretty clear what they're there to do. You know, in terms of the store closure and the limiting principle there, again, in a store like this that is set up to be such a small space, crowded with customers, and three people come in with large firearms, it is a natural consequence of that robbery that the store is going to have to close to investigate, to pull tape, to figure out what happened. Our position is that that applies to the man who is also standing in the doorway. I do not think that it's plausible that the jury decided this case saying it's not about the customers in the store, the interstate commerce must have been applied to that guy in the doorway. But even if they did, I think that's appropriate given that he is standing so close that the robbery is captured on the internal surveillance camera. The idea that the store would need to close down for the investigation of that robbery is a natural consequence of the defendant's actions. And of course, that's not all that we have here. We have the robbery inside the store, the people who are waiting to make those purchases. If there aren't any other questions, Your Honors, the government requests that the court affirm the district court's decision and the jury's verdict. Anything else? Okay. Ms. O'Neill, thanks to you. Thank you. Mr. Tice, I'm going to give you the couple of minutes. I was somewhat surprised to hear the government claim that this court allows robbery of customers to be a Hobbs Act robbery. This court has never said that. In fact, it has never referred to that. Now, what the government has done in the brief and here this morning... What case are you relying on? I'm sorry? Tell us the case that you're relying on that says that customers cannot be... It starts out with Mattson, which is an extortion case. Mattson, which is an extortion case where the person who's extorted is an employee. Then it carries over to cases like Moore, which is a case involving a robbery of drug dealers and the court recognizes that. In the Marrero case... Okay, I just wanted to make sure that I wasn't... I'm familiar with those cases. Okay. So we're scrapulating from this principle that customers cannot be Hobbs Act robbery victims. Right. There are other cases from other circuits, which we said in the brief. Okay. Thank you. Of course, the million dollar question in all of this is, what is the limiting principle? The government says the limiting principle is if there is some naturally occurring consequence on commerce, then it's within the Hobbs Act. Well, that's exactly what this court was worried about in Marrero. Anytime there's any kind of a theft or a robbery, it's always going to have a ripple effect. Stone goes in the pond and the ripples go out forever. That's no limit at all. That's what Mattson said. That's no limit at all. The limit is, was the victim someone who was in a business, not someone who is a customer of the business? I think I've said all that I can say that's helpful on this, and so I'd ask for reversal. Thank you. Okay. Mr. Tice, Mr. O'Neill, thank you very much. We will take the appeal under advisement. Mr. Tice, we do so with special thanks to you. You took this on appointment, correct? Appointed for... For Mr. Barksdale. Mr. Barksdale, but the arguments, I think, apply for Mr. Demas and Mr. Clark as well, so all three of those defendants should know that they were heard and ably represented, and we appreciate it very much. Thank you.